Fee Paid

Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582



**FILED**
CLERK, U.S. DISTRICT COURT

10/19/22

CENTRAL DISTRICT OF CALIFORNIA
BY: __CS__ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JORGE ALEJANDRO ROJAS,

                Plaintiff,

      v.

HOLLY HANCOCK, ANNA REITANO,
ELIZABETH LASHLEY-HAYNES,
CAROLYN "JIYOUNG" PARK,
GROUND GAME LA, PROGRESSIVE
ERA PAC AKA PROGRESSIVE ERA
PROJECT, and TIDES ADVOCACY,

                Defendants.

Case No. **CV22-7622-SVW(SKx)**

**COMPLAINT FOR:
VIOLATIONS OF THE TELEPHONE
CONSUMER PROTECTION ACT, 47
U.S.C. § 227.**

      Plaintiff, Jorge Alejandro Rojas, brings this Complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against Defendants Holly Hancock, Anna Reitano, Elizabeth Lashley-Haynes, Carolyn "Jiyoung" Park, Ground Game LA, Progressive Era PAC aka PROGRESSIVE ERA PROJECT, and Tides Advocacy, collectively "Defendants," and alleges based on personal knowledge and information and belief, as follows:

## INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints

-1-

in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2343 (2020).*

2. Plaintiff brings this action against Defendant for violations of the TCPA, 47 U.S.C. § 227.

3. This case involves a campaign by Defendants to send out political campaign related text messages.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendant as it regularly and systemically conducts business in the state of California. Specifically, the Defendant conducts significant business in the State. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

8. Defendant Holly Hancock is running for Office No 70's judicial seat in the Superior Court of Los Angeles County, and is located at 1 Manchester Blvd, Suite 700 Inglewood, CA 90301.

9. Defendant Anna Reitano is running for Office No 60's judicial seat in the Superior Court of Los Angeles County, and is located at MB# 159  2029 Verdugo Blvd. Montrose, CA  91020.

10. Defendant Elizabeth Lashley-Haynes is running for Office No 67's judicial seat in the Superior Court of Los Angeles County, and is located at 3660 E. Colorado Blvd. #1047 Pasadena, CA 91107

11. Defendant Carolyn "Jiyoung" Park is running for Office No 118's judicial seat in the Superior Court of Los Angeles County, and is located at 1 W. Manchester Blvd., Suite 700 Inglewood, CA 90301.

12. Defendant Ground Game LA pays for The Defenders of Justice website, according to its own website (https://thedefendersofjustice2022.com), and is located at 5617 Hollywood Blvd Suite 107 Los Angeles, California 90028, and a registered agent of William Przylucki.

13. Defendant Ground Game LA is a suspended FTB entity since on or about late 2021.

14. Defendant Progressive Era PAC also known as PROGRESSIVE ERA PROJECT is located at 436 14th St Ste 700 Oakland, CA 94612. Progressive Era Project is a California NonProfit Corporation with a registered agent of Ludovic Blain located at the same address.

15. Defendant Tides Advocacy is a California Nonprofit Corporation located at 1014 Torney Ave San Francisco, CA 94129 and a registered agent of Registered Agent Solutions, Inc.

16. Defendants are each a person as defined by 47 U.S.C. § 153(39).

17. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

20. "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, (2016).

21. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

22. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

23. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes any non-consensual calls made for non-emergency purposes, regardless of whether or not they are informational, telemarketing, telephone solicitations, or similar such calls. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

24. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

25. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

"[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (*emphasis* added)

26. Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

27. Employees can be held liable in TCPA actions for unlawful conduct.

28. The defendants in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

29. The restriction against using an ATDS or prerecorded message to call a number applies to any non-emergency, non-consensual call, regardless of its purpose, regardless of whether they are telephone solicitations (as in survey or political calls),

and regardless of whether the individual called in on any do-not-call registry. *See Perrong v. Victory Phones LLC,* No. CV 20-5317, 2021 WL 3007258, at *6 *(*E.D. Pa*. July 15, 2021). This is clearly indicated by the fact that the TCPA prohibits "any person" from initiating "any call" using an ATDS. *See* id.

30. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy. *In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

31. The May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. At 6587 n. 107.

32. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

33. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586 (¶ 34).

34. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n.107.

35. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

## FACTUAL ALLEGATIONS

36. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582. The phone number is not associated with a business and is used by Plaintiff solely.

37. Plaintiff is the account holder and customary user of his phone number.

38. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

39. Plaintiff registered his phone number on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls. The calls prevented Plaintiff from using his phone for legitimate purposes.

40. Defendants send out political campaign related text messages to individuals notwithstanding the lack of prior express written consent to send them.

41. **Call 1.** On or about October 19, 2022, at 6:48 PM Chicago time, Plaintiff received a text from Defendants, from 213-204-5377.

42. The text in Call 1 contained an image with candidates for office listed. Specifically, Holly Hancock, Anna Reitano, Elizabeth Lashley-Haynes, and Carolyn "Jiyoung" Park. The image contained a link to the website "thedefendersofjustice2022.com."

43. **Call 2.** On or about October 19, 2022, at 6:48 PM Chicago time, Plaintiff received a text from Defendants, from 213-204-5377.

44. The text in Call 2 stated: "Hi Delfin! Have you thought about who you're voting for the LA Superior Court on Nov. 8th? The judges we pick will play a huge role in civil, family, criminal, probate, juvenile, and mental health courts so we must elect judges who will represent the public, not private interests.   Four experienced attorneys that have my support go by the name "The Defenders of Justice" and their names are Anna Slotky Reitano (Seat 60), Elizabeth Lashley-Haynes (Seat 67), Holly Hancock (Seat 70), and Carolyn "Jiyoung" Park (Seat 118) You can learn more by visiting thedefendersofjustice2022.com. Can they count on your support?   Let me know if you have any questions or reply stop to opt out. ladefensajusticepac.com/disclaimer; Top Funders: La Defensa, a project of Tides Advocacy; Progressive Era PAC."

45. Plaintiff has never gone by the name of "Delfin."

46. Defendants worked in concert to communicate messages regarding their political campaigns. To generate support for their campaigns and causes, Defendants relied upon their automated messages.

47. The texts were sent for the benefit of the candidates identified in the text message and their associated campaigns. The texts contained a link to the website http://thedefendersofjustice2022.com & http://ladefensajusticepac.com/disclaimer. All these Defendants had an interest in the election of the individuals being referenced in the texts.

48. The Defenders of Justice website contains a link at the bottom which states "Paid for by Ground Game LA."

49. The La Defensa Justice PAC website references the sfollowing text "Ad paid for by Justice PAC by La Defensa, a Project of Tides Advocacy 4 Hancock, Lashley-Haynes, Reitano & Park for Judge 2022. Committee major funding from: La

Defensa, a project of Tides Advocacy Smart Justice California Action Fund Progressive Era PAC."

50. The calls above were made utilizing an Automatic Telephone Dialing System ("ATDS") without Plaintiff's prior express written consent.

51. The presence of "Reply stop to opt out" is further indicative of the use of an ATDS.

52. Plaintiff is ignorant of the exact process by which the system(s) used by the Defendants operate other than drawing the reasonable inference and making the allegation that it stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc*., No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc*., No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

53. Plaintiff did not have a prior business relationship with Defendants.

54. Defendants did not have any consent to call Plaintiff.

55. Defendants are not an organization exempt from the TCPA.

56. Defendants' calls to Plaintiff were a "telephone solicitation."

57. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

58. The impersonal and generic nature of the calls demonstrate Defendants utilized an ATDS and/or a pre-recorded voice in making the calls.

59. In total, Defendants and/or their affiliates placed at least two (2) telephone solicitation calls to Plaintiff.

60. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

61. Defendants have a pattern and practice of failing to comply with the TCPA.

62. The foregoing acts and omissions were in violation of the TCPA.

63. Defendants are engaging in violations of the TCPA to get campaign votes.

64. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

65. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

66. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

67. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

68. Plaintiff is also entitled to an award of costs.

69. Defendants' calls were not made for "emergency purposes."

70. Defendants' calls to Plaintiff were made without any prior express written consent.

71. Defendants contacted Plaintiff even though Plaintiff was on the Do Not Call Registry.

72. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

73. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

74. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

75. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

**COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)**

76. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

77. Defendants or one of their affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least two (2) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

78. Plaintiff was statutorily damaged at least two (2) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

79. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $3,000.00 plus costs and any other remedy deemed appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and/or severally, in an amount to be more fully determined at trial, but at least $3,000.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5),

D. All reasonable attorneys' fees, witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

E. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

F. Leave to amend this Complaint to conform to the evidence presented at trial,

G. Any other relief this Court deems proper.

Respectfully submitted,

Dated: October 19, 2022

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582